IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cr-123-WKW |
| | ) | [WO] |
| PAUL ROWE | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the court is the motion to suppress evidence (Doc. 15) filed by Defendant Paul Rowe. The court held an evidentiary hearing on the motion on May 24, 2018, and has reviewed the Government's response to the motion. *See* Doc. 22. After careful consideration of the parties' submissions, the evidence heard at the hearing, and the relevant law, and for the reasons stated herein, the undersigned Magistrate Judge RECOMMENDS that the motion to suppress (Doc. 15) be DENIED.

### I. BACKGROUND

On March 14, 2018, a Grand Jury sitting within the Middle District of Alabama indicted Rowe on two counts: (1) possession of marijuana with intent to distribute and (2) possession of a firearm in furtherance of a drug trafficking crime. Doc. 1. Rowe claims in his motion to suppress that the Government obtained the critical evidence supporting the charges—two handguns and four bags of marijuana—by unlawfully stopping and searching his vehicle. *See generally* Doc. 15. During the evidentiary hearing, the court received testimony from Joseph Dunn ("Sergeant Dunn"), a Montgomery, Alabama police officer. Doc. 32. After the hearing, Rowe filed a supplemental brief expanding on arguments made in the original motion to suppress and raising new issues, including his

contention that Sergeant Dunn illegally seized his personal effects.

The testimony and evidentiary materials offered at the hearing established the following facts. On the afternoon of July 17, 2017, Sergeant Dunn was conducting traffic interdiction near Exit 3 on Interstate 85 in Montgomery, Alabama. Doc. 32 ("Tr.") at 5. Sergeant Dunn regularly conducts interdiction activities to identify and arrest "major criminals" including those involved in drug trafficking and white collar crimes. Tr. at 4. He does so by enforcing traffic laws and "pay[ing] attention to the driver, passengers, [and] the vehicle for any and all signs of possible criminal activity." Tr. at 4. On the date of the incident in question, Sergeant Dunn was positioned in his marked police vehicle on the shoulder of the northbound lanes of Interstate 85. Tr. at 5. Sergeant Dunn had just completed a traffic stop of another vehicle when he observed a small black car with a Louisiana license plate traveling northbound slower than the flow of traffic. Tr. at 7. While Sergeant Dunn did not know exactly how fast the vehicle was traveling, it was moving significantly slower than both the vehicles around it and the posted speed limit. Tr. at 7. As the vehicle passed Sergeant Dunn's car, it decelerated, forcing the vehicle behind it to brake to avoid a collision. Tr. at 7. The trailing vehicle had been traveling the same speed as the rest of traffic. Tr. at 8. The small black car was not traveling in the far-right lane— that is, the one closest to the shoulder on which Sergeant Dunn's vehicle was parked. Tr. at 23.

At that point, Sergeant Dunn decided to stop the black car for impeding the flow of traffic. Tr. at 8. Sergeant Dunn had to catch up with the vehicle after it passed him, and he eventually stopped it about five miles later, at mile marker 8, and approached from the

2

passenger side. Tr. at 8. Immediately upon making contact with the driver and sole occupant, later determined to be Rowe, Sergeant Dunn could smell marijuana and could see small pieces of marijuana on the passenger seat and center console. Tr. at 9. He also saw a backpack on the backseat. Tr. at 10. Sergeant Dunn began speaking with Rowe and observed that his behavior was aggressive. Tr. at 10. Rowe accused Sergeant Dunn of pulling him over "because of what he looked like" and told Sergeant Dunn that he was going to record him with his cell phone. Tr. at 10. This behavior lead Sergeant Dunn to conclude that Rowe was attempting to intimidate him. Tr. 10. Based on the smell of marijuana, the visible pieces of marijuana on the passenger seat and the center console, and Rowe's behavior, Sergeant Dunn suspected that Rowe was involved in drug trafficking. Tr. at 11.

Once Sergeant Dunn suspected criminal activity, he asked Rowe to exit the vehicle and stand at the front of his police vehicle while he checked Rowe's identification. Tr. at 11. Rowe "continued to be aggressive" and continued to film Sergeant Dunn. Tr. at 11. Sergeant Dunn then patted Rowe down for weapons and took Rowe's phone from him because Sergeant Dunn did not want Rowe to contact other people who might drive to the location of the traffic stop. Tr. at 11. During the pat down, Sergeant Dunn felt a wad of cash in Rowe's pocket. Tr. at 11. While Rowe was standing at the front of Sergeant Dunn's vehicle, he repeatedly looked at his own car then back at Sergeant Dunn before starting to walk toward his vehicle. Tr. at 11. Sergeant Dunn was concerned that Rowe could be attempting either to flee or to grab a weapon from his car, and after repeatedly telling him to stand still Sergeant Dunn eventually placed him in handcuffs. Tr. at 11–12. Without

3

asking for Rowe's consent, Sergeant Dunn then searched the vehicle and the backpack on the passenger-side backseat. Tr. at 12. In the backpack, he found a large amount of marijuana and a firearm. Tr. at 12. He found a second firearm in the pocket behind the front passenger seat. Tr. at 12. While Sergeant Dunn searched the vehicle, Rowe remained standing in handcuffs near the front of Sergeant Dunn's police vehicle, but was not under arrest. Tr. at 34. Sergeant Dunn arrested Rowe only after discovering the marijuana and firearms. Tr. at 34.

## II. DISCUSSION

The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The temporary detention of individuals during a traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Thus, every stop of a vehicle by police must be reasonable. *Id.* at 810. "A traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation occurred or justified by reasonable suspicion [of criminal activity]." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (citation omitted). "[A]n officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citations and internal quotation marks omitted). Here, Rowe asserts that the officer's stop and search of his vehicle on Interstate 85 was not lawful for two reasons: (1) Sergeant Dunn did not have probable cause of a traffic violation, and

4

(2) the warrantless search of his car was unreasonable.[1] *See* Doc. 15 at 3–6.

**A.    Traffic Stop**

At the evidentiary hearing, Sergeant Dunn testified that he had probable cause to believe Rowe violated Alabama Code § 32-5A-174.  This provision prohibits drivers from operating a vehicle "at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." Ala. Code § 32-5A-174.  "Probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (internal quotation marks omitted).  Importantly, "probable cause does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction." *Id.* (internal quotation marks omitted).

Sergeant Dunn testified that Rowe's vehicle was traveling significantly slower than the flow of traffic when he first observed it driving northbound on Interstate 85. Tr. at 7.  Then, as the vehicle passed him, it slowed even more, causing the vehicle behind it to brake to avoid a collision. Tr. at 7–8.  The car's speed, combined with the fact that it slowed down further as it passed Sergeant Dunn's vehicle, impeded the flow of traffic. Tr. at 8.  There is no evidence suggesting that Rowe's reduced speed was necessary for the safe

---

[1] Rowe initially argued that certain statements should be suppressed as inconsistent with *Miranda v. Arizona* because he was not given a proper advisement of his constitutional rights. *See* Doc. 15 at 3.  However, at the evidentiary hearing, Rowe's counsel admitted that this issue is moot because Rowe did not make any potentially inculpatory statements that could be used against him at trial. Tr. at 2–3.  Thus, this issue will not be considered by the court.

operation of his vehicle.  And because Rowe was not traveling in the lane closest to the shoulder where Sergeant Dunn was parked, he was not required by the Alabama Move Over Act[2] to slow down as he passed Sergeant Dunn's police vehicle.  *See* Ala. Code § 32-5A-58.2.  Sergeant Dunn's testimony, which is undisputed, is sufficient to establish that he had probable cause to believe Rowe impeded traffic in violation of § 32-5A-174.  The initial traffic stop comports with the Fourth Amendment.

**B.     Vehicle Search**

"It is a basic principle of Fourth Amendment law that searches and seizures . . . without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted).  "Nevertheless, because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." *Id.* (internal quotation marks omitted).  One long-recognized and broadly-applied exception to the warrant requirement occurs "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (internal quotation marks omitted).  One such exigency exists in the case of motor vehicles.  This exception, known as the "automobile exception," relies upon two justifications: (1) the "ready mobility" of motor vehicles and (2) "the pervasive regulation of vehicles capable of traveling on the public highways." *Collins v. Virginia*, __ S. Ct. __,

---

[2] Among other subjects, the Act instructs drivers on interstate highways either to "vacate the lane closest to" a parked law enforcement vehicle that is "making any use of any visual signals" or to slow down "to a speed that is at least 15 miles per hour less than the posted speed limit." Ala. Code § 32-5A-58.2.

2018 WL 2402551, at *4 (May 29, 2018) (internal quotation marks omitted). "When these justifications for the automobile exception 'come into play,' officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* at *5 (quoting *California v. Carney*, 471 U.S. 386, 393 (1985)). Of course, "an officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception." *Id.* at *7.

Accordingly, police may search a vehicle when "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Lindsey*, 482 F.3d at 1293. Mobility depends on whether the vehicle is operable, and the key question is "whether the police had probable cause for the search and seizure of the vehicle." *Id.* In this context, probable cause "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (internal quotation marks omitted). Moreover, when officers have probable cause to search a vehicle that is lawfully stopped, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).[3]

Here, Sergeant Dunn had probable cause to conduct a warrantless search of Rowe's

---

[3] In supplemental briefing, Rowe argues that under *Arizona v. Gant* the search in this case was unreasonable because Rowe was pulled over for a traffic offense and was not within reaching distance of his vehicle when Sergeant Dunn searched it. *See* Doc. 37 at 21–24. *Gant* explored the contours of the search-incident-to-arrest doctrine in the automobile context and, specifically, whether a vehicle can be searched after an "arrestee has been secured and cannot access the interior of the vehicle" and "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). Here, it is undisputed that Rowe was not arrested until after Sergeant Dunn searched the vehicle and, as a result, the Government does not travel under the search-incident-to-arrest exception to the warrant requirement as a justification for the search of Rowe's car.

vehicle after stopping it lawfully. Rowe does not dispute that his car was operable, and in fact had been operated on Interstate 85 immediately before the traffic stop, and the court has already found that Sergeant Dunn had probable cause to stop the vehicle for a traffic violation, satisfying the "lawful right of access" requirement. Sergeant Dunn testified that he immediately smelled marijuana and observed marijuana debris on the front seat and center console when he first approached Rowe's vehicle. Further, Rowe behaved defensively and in a hostile manner toward Sergeant Dunn, lending credence to the suspicion that Rowe was engaging in criminal activity. Tr. at 10. Under the totality of the circumstances, there was more than a fair probability that the vehicle contained marijuana, and Sergeant Dunn's search of the backpack on the back seat was justified under the theory that it could contain the marijuana he reasonably believed to be present in the vehicle. Accordingly, because probable cause justified Sergeant Dunn's search of the vehicle, the automobile exception to the warrant requirement applies and no violation of the Fourth Amendment occurred.

**C.     Seizures from Rowe's Person**

Finally, Rowe argues in supplemental briefing that Sergeant Dunn's seizure of his cell phone and currency was unlawful. Doc. 37 at 15–21. But the court's arraignment order required Rowe to state all issues related to his motion to suppress in separately numbered paragraphs in the "Issues Presented" section of his motion. *See* Doc. 11 at 2. "Grounds not stated in the 'Issues Presented' section of the motion will be deemed to have been waived." Doc. 11 at 2. Because Rowe did not raise the seizure issue in his original motion and has

not articulated a legitimate basis for failing to do so, this issue has been waived. Nevertheless, even if not waived, this claim does not provide any basis for relief.

Searches and seizures incident to an arrest that is supported by probable cause are lawful under the Fourth Amendment. *See, e.g., United States v. Robinson*, 414 U.S. 218, 235 (1973). A full search of an arrestee's person is not only an exception to the warrant requirement, but *per se* reasonable. *Id.* And courts regularly uphold "searches and seizures incident to arrest in which containers and other items, including cell phones, [are] seized and searched." *United States v. Dixon*, 984 F. Supp. 2d 1347, 1350 (N.D. Ga. 2013) (gathering cases). Here, while Sergeant Dunn took Rowe's cell phone from him before arresting him for safety reasons, this seizure was incident to Rowe's arrest because it is not "particularly important that the search precede[s] the arrest rather than vice versa" when a formal arrest occurs shortly after the search and seizure. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980); Doc. 32 at 11 ("I took his phone [and p]ut it in the car. Because a lot of times people will start calling people. Then I'll start having 10, 20 people showing up on a traffic stop."). And Sergeant Dunn did not actually remove the cash from Rowe's pocket before the arrest. *See* Doc. 32 at 31 ("I just pulled his pocket back so I could look and see that it was a large amount of currency.").

In any event, Rowe's reliance on *Terry v. Ohio* is misplaced, because Sergeant Dunn's seizure of his cell phone and currency occurred pursuant to an arrest, not a brief and investigatory *Terry* stop. Despite offering a blanket opposition to the seizures, Rowe has offered no binding authority for the proposition that the search and seizure incident to

9

the lawful arrest in this case is unreasonable. The court therefore concludes that Sergeant Dunn's seizure of Rowe's cell phone and currency was lawful under the Fourth Amendment.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the motion to suppress (Doc. 15) be DENIED. It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation not later than **July 5, 2018.** Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE on the 20th day of June, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE